# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

*In re EQT Corporation Securities Litigation*     Case No. 2:19-cv-00754-RJC

## MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S
## <u>MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES</u>

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ........................................................................................ 4

I.   PLAINTIFFS' COUNSEL ARE ENTITLED TO COMPENSATION FROM THE COMMON FUND ................................................................. 4

II.  THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND ................................................................. 5

III. THE REQUESTED FEE IS REASONABLE UNDER EITHER THE PERCENTAGE-OF-RECOVERY METHOD OR THE LODESTAR METHOD ........... 6

     A.   The Requested Fee Is Reasonable Under the Percentage-of-Recovery Method ................................................................. 6

     B.   The Reasonableness of the Requested Fee Is Confirmed by a Lodestar Cross-Check ................................................................. 7

IV.  THE FACTORS CONSIDERED BY COURTS IN THE THIRD CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE ................. 9

     A.   The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request ................................ 10

     B.   The Reaction of Class Members to the Settlement and Fee Request to Date Supports Approval of the Fee Request ................................ 11

     C.   The Skill and Efficiency of Lead Counsel Support Approval of the Fee Request ................................................................. 11

     D.   The Complexity and Duration of the Litigation Support Approval of the Fee Request ................................................................. 12

     E.   The Risk of Non-Payment Supports Approval of the Fee Request ...................... 13

     F.   The Significant Time Devoted to This Case by Plaintiffs' Counsel Supports Approval of the Fee Request ................................ 14

     G.   The Requested Fee of 28% of the Settlement Fund Is Within the Range of Fees Typically Awarded in Actions of This Nature ........................... 16

     H.   The Fact That the Benefits of the Settlement Are Attributable to the Efforts of Plaintiffs' Counsel Supports Approval of the Fee Request ........................... 16

i

    I.     The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request ................................................................................................ 17

V.    LEAD COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED ................................................. 17

VI.    PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS UNDER 15 U.S.C. § 78u-4(A)(4) ................................................................................ 19

VII.    CONCLUSION ................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002)...........................................................................7, 11

*In re AT&T Corp. Sec. Litig.*,
  455 F.3d 160 (3d Cir. 2006).....................................................................6, 8, 17, 18

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)...........................................................................................5

*Boston Ret. Sys. v. Uber Techs., Inc.*,
  2024 WL 5341197 (N.D. Cal. Dec. 4, 2024) .............................................................7

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005)...................................................................................5

*Chabot v. Walgreens Boots Alliance, Inc.*,
  2024 WL 3250930 (M.D. Pa. Feb. 7, 2024)...............................................................6

*City of Pontiac Gen. Empls.' Ret. Sys. v. Wal-Mart Stores Inc.*,
  2019 WL 1529517 (W.D. Ark. Apr. 8, 2019) .............................................................7

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000).............................................................................11

*In re Datatec Sys., Inc. Sec. Litig.*,
  2007 WL 4225828 (D.N.J. Nov. 28, 2007) ..............................................................12

*Dickerson v. York Int'l Corp.*,
  2017 WL 3601948 (M.D. Pa. Aug. 22, 2017) .............................................................9

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
  582 F.3d 524 (3d Cir. 2009)...............................................................................5, 10

*In re Envision Healthcare Corp. Sec. Litig.*,
  2024 WL 1270007 (M.D. Tenn. Mar. 21, 2024) .........................................................7

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)....................................................................................6

*In re Genta Sec. Litig.*,
  2008 WL 2229843 (D.N.J. May 28, 2008) ..............................................................12

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000)...................................................................5, 9, 10

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)......................................................................................10

*In re Ikon Office Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)............................................................. *passim*

*In re Ins. Brokerage Antitrust Litig.*,
  297 F.R.D. 136 (D.N.J. 2013).......................................................................6

*Knurr v. Orbital ATK, Inc.*,
  2019 WL 3317976 (E.D. Va. June 7, 2019) ...................................................7

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
  2009 WL 4730185 (D.N.J. Dec. 4, 2009) ....................................................6

*Lanni v. New Jersey*,
  259 F.3d 146 (3d Cir. 2001)..........................................................................9

*In re Linerboard Antitrust Litig.*,
  2004 WL 1221350 (E.D. Pa. June 2, 2004), *amended*, 2004 WL 1240775
  (E.D. Pa. June 4, 2004) ................................................................................10

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..............................................20

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*,
  2016 WL 11575090 (D.N.J. June 28, 2016)...............................................18

*In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*,
  2013 WL 5505744 (D.N.J. Oct. 1, 2013).....................................7, 8, 9, 20

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)......................................................................................9

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
  No. 1:08-cv-05310, slip op. (S.D.N.Y. Mar. 8, 2019), ECF No. 320 ......................7

*In re Novo Nordisk Sec. Litig.*,
  No. 3:17-cv-00209-ZNQ-LHG, slip op. (D.N.J. July 13, 2022), ECF No. 361 ....................6

*O'Hern v. Vida Longevity Fund, LP*,
  2023 WL 3204044 (D. Del. May 2, 2023).....................................................9

*In re Ocean Power Techs., Inc.*,
  2016 WL 6778218 (D.N.J. Nov. 15, 2016) ............................................6, 17

iv

*Peace Officers' Annuity & Benefit Fund of Ga. v. Davita, Inc.*,
2021 WL 2981970 (D. Colo. July 15, 2021) ........................................................................7

*Pearlstein v. Blackberry Ltd.*,
2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)......................................................................7

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)..............................................................................8, 9, 10, 16

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)...........................................................................................6, 8

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
2008 WL 9447623 (D.N.J. Dec. 9, 2008) .........................................................................20

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) ....................................................................................18

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
2012 WL 1964451 (D.N.J. May 31, 2012) ...............................................................9, 14, 20

*Schuler v. Medicines Co.*,
2016 WL 3457218 (D.N.J. June 24, 2016) .....................................................................5, 10

*Stevens v. SEI Invs. Co.*,
2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ........................................................................8

*Sullivan v. DB Invs.*,
667 F.3d 273 (3d Cir. 2011)...........................................................................................5, 8

*Trief v. Dun & Bradstreet Corp.*,
840 F. Supp. 277 (S.D.N.Y. 1993) ...................................................................................14

*In re ViroPharma Inc. Sec. Litig.*,
2016 WL 312108 (E.D. Pa. Jan. 25, 2016) .............................................................10, 11, 18

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) .......................12, 13, 14

*In re Wilmington Trust Sec. Litig.*,
2018 WL 6046452 (D. Del. Nov. 19, 2018) ....................................................................6, 7

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................................5

*Yedlowski v. Roka Bioscience, Inc.*,
2016 WL 6661336 (D.N.J. Nov. 10, 2016) .......................................................................18

**STATUTES**

15 U.S.C. § 78u–4(a)(4)...........................................................................................................19, 20

Private Securities Litigation Reform Act of 1995 ..........................................................1, 4, 19, 20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(f)..................................................................................................................2, 15

Court-appointed Lead Counsel, Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), respectfully submit this memorandum of law in support of their motion for: (i) an award of attorneys' fees for all Plaintiffs' Counsel in the amount of 28% of the Settlement Fund; (ii) an award of $8,210,215.06 in Litigation Expenses reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the Action; and (iii) awards to each of the Plaintiffs for costs incurred directly related to their representation of the Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## PRELIMINARY STATEMENT

The proposed Settlement, which provides for a $167.5 million cash payment for the benefit of the Class, is an excellent result that Plaintiffs achieved only after years of hard-fought litigation by Plaintiffs' Counsel. The Settlement is a direct result of the skill, tenacity, and effective advocacy of Lead Counsel who litigated this Action against highly skilled defense counsel on a fully contingent basis for more than six years. Lead Counsel's efforts included conducting an extensive investigation of the claims, defeating Defendants' motion to dismiss, successfully moving for certification of the Class and defending the Court's class certification order from potential appeal, completing extensive fact and expert discovery, fully briefing motions for

---

[1] "Plaintiffs" include Lead Plaintiffs Government of Guam Retirement Fund ("Guam"), Eastern Atlantic States Carpenters Annuity Fund (f/k/a Northeast Carpenters Annuity Fund), and Eastern Atlantic States Carpenters Pension Fund (f/k/a Northeast Carpenters Pension Fund) (collectively, "EAS Carpenters," and, together with Guam, "Lead Plaintiffs"), and additional Plaintiff Cambridge Retirement System ("Cambridge Retirement"). Capitalized terms that are not defined in this memorandum of law have the same meanings as set forth in the Stipulation and Agreement of Settlement dated June 25, 2025 (ECF No. 549) ("Stipulation") or in the Joint Declaration of Adam H. Wierzbowski and S. Douglas Bunch in Support of (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Joint Declaration" or "Joint Decl."), filed herewith. Citations to "¶__" herein refer to paragraphs in the Joint Declaration and citations to "Ex. __" herein refer to exhibits to the Joint Declaration.

summary judgment and nine motions to exclude various experts' testimony, and engaging in extended arm's-length settlement negotiations, including several mediation efforts, over the course of several years.  Plaintiffs' Counsel prosecuted the Action and obtained the Settlement in the face of significant challenges to proving both liability and damages that posed a serious risk that there might be no recovery at all.

As detailed in the accompanying Joint Declaration,[2] Lead Counsel vigorously pursued the claims in this Action for the benefit of the Class for more than six years.  Among other things, Lead Counsel:  (a) conducted an extensive investigation into the alleged fraud, including interviewing dozens of former employees of EQT and other industry participants; (b) drafted a detailed amended complaint based on this extensive factual investigation; (c) successfully opposed Defendants' motion to dismiss the Complaint through extensive briefing; (d) conducted extensive fact and expert discovery, which included reviewing over seven million pages of documents obtained from Defendants and third parties, locating and producing over 80,000 pages of documents in response to Defendants' document requests, and taking or defending a total of 53 depositions, including 28 fact depositions, 17 expert depositions at the merits stage, and 8 depositions in connection with class certification; (e) successfully moved for class certification, and opposed Defendants' Rule 23(f) petition; (f) worked extensively with experts in the areas of loss causation and damages, natural gas drilling, the oil and gas industry, due diligence and investment banking; (g) opposed Defendants' motion for summary judgment and Defendants' four *Daubert* motions; (h) affirmatively moved for partial summary judgment and filed five *Daubert*

---

[2] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, among other things, the history of the Action and a description of the services Plaintiffs' Counsel provided for the benefit of the Class; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of the litigation; and the facts and circumstances underlying Lead Counsel's request for an award of attorneys' fees and expenses.

motions to exclude certain opinions and testimony from Defendants' proposed expert witnesses; and (i) participated in lengthy arm's-length settlement negotiations, including three mediation sessions, each of which included the preparation and exchange of detailed mediation statements. ¶¶ 3, 11-64, 112.

The Settlement achieved through Plaintiffs' Counsel's efforts is a particularly favorable result when considered in light of the substantial litigation risks Plaintiffs faced, including the risks associated with proving Defendants' liability and establishing loss causation and damages. These risks are detailed in the Joint Declaration at paragraphs 67 to 78 and are summarized in the memorandum of law supporting the Settlement. These risks posed a real possibility from the outset of the litigation that Plaintiffs and the Class might not recover anything at all, or could have recovered a lesser amount than obtained in the Settlement.

As compensation for their efforts on behalf of the Class and for the risk of nonpayment they faced in prosecuting the Action on a contingent basis, Lead Counsel now seek an attorneys' fee award for all Plaintiffs' Counsel in the amount of 28% of the Settlement Fund. As detailed herein, the requested fee is consistent with the range of fees that courts in this Circuit have awarded in securities class actions with comparable recoveries on a percentage basis. Further, the requested fee represents a "negative" multiplier of approximately 0.68 on Plaintiffs' Counsel's total lodestar, which is well below the range of multipliers typically awarded in class actions with significant contingency risks such as this one.

The fee request also has the support of each of the Plaintiffs, which are each sophisticated institutional investors that actively supervised and participated in the Action. *See* Declaration of Paula Blas on behalf of Guam (Ex. 1) ("Blas Decl."), at ¶¶ 3-7, 9-10; Declaration of Joseph Obuchowicz on behalf of EAS Carpenters (Ex. 2) ("Obuchowicz Decl."), at ¶¶ 3-7, 9-10;

Declaration of Francis E. Murphy III on behalf of Cambridge Retirement (Ex. 3) ("Murphy Decl."), at ¶¶ 3-7, 9-10.  Each of the Plaintiffs fully supports the fee request as reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation.  *Id.*

In addition, while the deadline for Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date no objections have been received.  The deadline for objections is October 9, 2025.  Lead Counsel will address any objections to the requested attorneys' fees and expenses in their reply papers, which will be filed by October 23, 2025.

Lead Counsel also seek to recover the Litigation Expenses that Plaintiffs' Counsel incurred in prosecuting and resolving this litigation, which total $8,210,215.06 during more than six years of litigation.  As discussed below, these expenses were reasonable and necessary for the prosecution and resolution of this complex litigation and are of the type that are routinely charged to clients in non-contingent litigation.  The largest component of these expenses, roughly 80%, relate to expert costs, including experts in loss causation and damages and the natural gas drilling industry.  Finally, Lead Counsel also request that Plaintiffs each be granted awards as provided for under the PSLRA in the total amount of $33,682.24, in reimbursement for the substantial time that their employees dedicated to the Action.

For all the reasons set forth herein and in the Joint Declaration, Lead Counsel respectfully submit that the requested attorneys' fees and Litigation Expenses are fair and reasonable under applicable legal standards and, therefore, should be awarded by the Court.

## ARGUMENT

### I.   PLAINTIFFS' COUNSEL ARE ENTITLED TO COMPENSATION FROM THE COMMON FUND

It is well settled that an attorney who maintains a lawsuit that results in the creation of a

fund or benefit in which others have a common interest may obtain fees from that common fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 205 (3d Cir. 2005) ("attorneys whose efforts create, discover, increase, or preserve a common fund are entitled to compensation"); *Schuler v. Medicines Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) ("Under the common fund doctrine, 'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009)); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members.").

Indeed, awards of fair attorneys' fees from a common fund ensure that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (citations omitted); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").

## II.  THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND

Lead Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained for the Class and utilize a lodestar cross-check to confirm that the fee is reasonable.  In the Third Circuit, the percentage-of-recovery method is "generally favored"

in cases involving a settlement that creates a common fund. *See Sullivan v. DB Invs.*, 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage of recovery method "because it allows courts to award fees from the [common] fund 'in a manner that rewards counsel for success and penalizes it for failure'"); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). The percentage-of-recovery method is almost universally preferred in common fund cases because it most closely aligns the interests of counsel and the class. *See Rite Aid*, 396 F.3d at 300; *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016).

## III.    THE REQUESTED FEE IS REASONABLE UNDER EITHER THE PERCENTAGE-OF-RECOVERY METHOD OR THE LODESTAR METHOD

### A.    The Requested Fee Is Reasonable Under the Percentage-of-Recovery Method

The requested 28% fee is reasonable and consistent with typical requests for awards of attorneys' fees under the percentage-of-recovery method. While there is no absolute rule, courts in the Third Circuit have observed that fee awards generally range from 19% to 45% of the settlement fund. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *Ikon*, 194 F.R.D at 194. Fees most commonly range from 25% to one-third of the recovery. *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery"); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) (same); *see also In re Wilmington Trust Sec. Litig.*, 2018 WL 6046452, at *9 (D. Del. Nov. 19, 2018) (finding 28% to be a "typical fee percentage" in the Third Circuit).

A review of attorneys' fees awarded in securities class actions with comparably sized settlements in this Circuit supports the reasonableness of the requested 28% fee. *See, e.g., Chabot v. Walgreens Boots Alliance, Inc.*, 2024 WL 3250930, at *1 (M.D. Pa. Feb. 7, 2024) (awarding

30% of $192.5 million settlement); *In re Novo Nordisk Sec. Litig.*, No. 3:17-cv-00209-ZNQ-LHG, slip op. at 2 (D.N.J. July 13, 2022), ECF No. 361 (Ex. 8A) (awarding 29% of $100 million settlement); *Wilmington Trust*, 2018 WL 6046452, at *9 (awarding 28% of $210 million settlement); *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, 2013 WL 5505744, at *57 (D.N.J. Oct. 1, 2013) (awarding 28% of $215 million settlement); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 130-31 (D.N.J. 2002) (awarding 28% of $194 million settlement); *Ikon*, 194 F.R.D. at 192-97 (awarding 30% of $111 million settlement, net of expenses).

Lead Counsel's fee request is also consistent with fees awarded by courts in other Circuits in similarly-sized securities class action settlements. *See, e.g.*, *Boston Ret. Sys. v. Uber Techs., Inc.*, 2024 WL 5341197, at *2 (N.D. Cal. Dec. 4, 2024) (awarding 29% of $200 million settlement); *In re Envision Healthcare Corp. Sec. Litig.*, 2024 WL 1270007, at *1 (M.D. Tenn. Mar. 21, 2024) (awarding 30% of $177.5 million settlement); *Pearlstein v. Blackberry Ltd.*, 2022 WL 4554858, at *10-11 (S.D.N.Y. Sept. 29, 2022) (awarding one third of $165 million settlement); *Peace Officers' Annuity & Benefit Fund of Ga. v. Davita, Inc.*, 2021 WL 2981970, at *3-4 (D. Colo. July 15, 2021) (awarding 30% of $135 million settlement); *Knurr v. Orbital ATK, Inc.*, 2019 WL 3317976, at *1 (E.D. Va. June 7, 2019) (awarding 28% of $108 million settlement); *City of Pontiac Gen. Empls.' Ret. Sys. v. Wal-Mart Stores Inc.*, 2019 WL 1529517, at *1 (W.D. Ark. Apr. 8, 2019) (awarding 30% of $160 million settlement); *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, No. 1:08-cv-05310, slip op. at 15 (S.D.N.Y. Mar. 8, 2019), ECF No. 320 (Ex. 8B) (awarding 28% of $165 million settlement).

## B.    The Reasonableness of the Requested Fee Is Confirmed by a Lodestar Cross-Check

The Third Circuit recommends that district courts use counsel's lodestar as a "cross-check" to determine whether the fee that would be awarded under the percentage approach is reasonable.

*See Sullivan*, 667 F.3d at 330; *AT&T*, 455 F.3d at 164.[3] "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method." *Rite Aid*, 396 F.3d at 306. "Conversely, where the ratio of the [percentage-of-recovery] to the lodestar is relatively low, the cross-check can confirm the reasonableness of the potential award under the [percentage] method." *In re Schering-Plough Corp. ENHANCE Sec. Litig.*, 2013 WL 5505744, at *33 (D.N.J. Oct. 1, 2013).

In complex contingent litigation such as this Action, fees representing multiples above the lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. Lodestar multipliers "compensate counsel for the risk of assuming the representation on a contingency fee basis." *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020). Courts typically approve fees in class cases that correspond to *positive* multiples of one to four times the lodestar, and sometimes more. *See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied").

Here, the lodestar cross-check further demonstrates the reasonableness of the requested fee percentage because the fee request is substantially below Lead Counsel's total lodestar. As detailed in the Joint Declaration, Plaintiffs' Counsel spent 124,875.9 hours of attorney and other professional time prosecuting the Action. ¶ 114. Plaintiffs' Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney, paralegal, or other professional by

---

[3] Under the full "lodestar method," a court multiplies the number of hours each timekeeper spent on the case by the hourly rate, then adjusts that lodestar figure by applying a multiplier to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorneys' work. The multiplier is intended to "account for the contingent nature or risk involved in a particular case and the quality" of the work. *Rite Aid*, 396 F.3d at 305-06.

his or her current hourly rate, is $69,426,020.50.  *Id.*[4]  Thus, the requested fee of 28% of the

Settlement Fund, or $46,900,000 (plus interest), represents a "negative" multiplier of 0.68 on

counsel's lodestar.  In other words, Plaintiffs' Counsel will recover only 68% of the total value of

the time that they dedicated to the Action.  *Id.*

      The fact that the requested fee is substantially less than counsel's lodestar strongly supports

the reasonableness of the request.  *See O'Hern v. Vida Longevity Fund, LP*, 2023 WL 3204044, at

*10 (D. Del. May 2, 2023) (a "negative multiplier of 0.83" was "well under the generally accepted

range and provides strong additional support for approving the attorneys' fee request"); *Dickerson

v. York Int'l Corp.*, 2017 WL 3601948, at *11 (M.D. Pa. Aug. 22, 2017) ("A negative multiplier

reflects that counsel is requesting only a fraction of the billed fee; negative multipliers thus 'favor

approval.'").

      Accordingly, the 28% fee requested here is reasonable under both the percentage-of-the-

fund approach and the lodestar approach.

## IV.  THE FACTORS CONSIDERED BY COURTS IN THE THIRD CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

      Under Third Circuit law, district courts have considerable discretion in setting an

appropriate percentage-based fee award in traditional common fund cases.  *See, e.g.*, *Gunter*, 223

F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees.").

Nonetheless, in exercising that broad discretion, the Third Circuit has noted that a district court

should consider the following factors in determining a fee award:

---

[4] The Supreme Court, Third Circuit, and district courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest.  *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001); *Schering-Plough ENHANCE*, 2013 WL 5505744, at *33, n. 28 ("In utilizing the blended billing rates to calculate the lodestar, the courts allow the use of current billing rates at the time the calculation is made rather than the billing rates actually in effect at the time the hours were recorded.").

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*Diet Drugs*, 582 F.3d at 541 (citing *Gunter*, 223 F.3d at 195, n.1; *Prudential*, 148 F.3d at 336-40). These fee award factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Diet Drugs*, 582 F.3d at 545; *see Schuler*, 2016 WL 3457218, at *9. Each of these factors supports the award of the 28% fee requested by Lead Counsel here.

### A.     The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016).

Here, Lead Counsel secured a Settlement that provides for a substantial, certain, and near-term payment of $167.5 million. To date, the Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), has mailed 201,244 copies of the Settlement Notice to potential Class Members and their nominees. *See* Declaration of Adam D. Walter, submitted on behalf of A.B. Data (Ex. 5) ("Walter Decl."), at ¶ 9. Accordingly, while the claim-submission deadline is not until December 10, 2025, a large number of Class Members can be expected to benefit from the Settlement. *See In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004), *amended*, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (size of benefitted population "is best estimated by the number of entities that were sent the notice describing the [Settlement]").

**B.    The Reaction of Class Members to the Settlement and Fee Request to Date Supports Approval of the Fee Request**

The Settlement Notice has been sent to over 201,000 potential Class Members or their nominees, published in *The Wall Street Journal* and over *PR Newswire*, and posted on the Settlement website as well as on Lead Counsel's websites.  The Settlement Notice provided a summary of the terms of the Settlement and stated that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 28% of the Settlement Fund.  *See* Settlement Notice, attached as Exhibit B to Walter Decl., at ¶¶ 5, 53.  The Settlement Notice also advised Class Members that they could object to the Settlement or fee request and explained the procedure for doing so.  *See id.* at p. 3, ¶¶ 57-58.  While the October 9, 2025 objection deadline set by the Court has not yet passed, as noted above, no objections have been received to date.

**C.    The Skill and Efficiency of Lead Counsel Support Approval of the Fee Request**

Lead Counsel's efforts have resulted in a favorable outcome for the benefit of the Class. *See AremisSoft*, 210 F.R.D. at 132 ("the single clearest factor reflecting the quality of class counsels' services to the class are the results obtained") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000)). The substantial and certain recovery obtained for Class members is the direct result of the significant efforts of highly-skilled attorneys who possess substantial experience in the prosecution of complex securities class actions.[5]  Lead Counsel's success in identifying confidential witnesses through their investigation, overcoming Defendants' motion to dismiss in a case with very substantial risks, certifying the Class and successfully defending the Court's class certification order from potential appeal, conducting substantial fact

---

[5] Plaintiffs' Counsel consists of Lead Counsel Cohen Milstein and BLB&G as well as Plaintiffs' current liaison counsel Comber Miller LLC and Plaintiffs' former liaison counsel Weiss Burkardt Kramer LLC. The experience of Lead Counsel and Comber Miller LLC is set forth in their firm resumes, which are attached to the Joint Declaration within Exhibits 6A, 6B, and 6C.

and expert discovery, briefing nine *Daubert* motions, and aggressively opposing Defendants'
motion for summary judgment while also filing their own affirmative motion for summary
judgment all created the circumstances under which Plaintiffs were able to obtain the $167.5
million cash Settlement.  In addition, Lead Counsel's reputation as attorneys who will zealously
pursue a meritorious case through trial further enabled them to negotiate the favorable recovery
for the benefit of the Class.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the
services rendered by Lead Counsel.  *See, e.g.*, *Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns
Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("The quality
of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work.").
Here, Defendants were represented ably by Kirkland & Ellis LLP and Reed Smith LLP, who
vigorously opposed Lead Counsel at every step of the Action.  ¶ 120.  The ability of Lead Counsel
to obtain a favorable outcome for the Class in the face of this formidable legal opposition further
confirms the quality of Lead Counsel's representation.

### D.    The Complexity and Duration of the Litigation Support Approval of the Fee Request

The complexity and duration of the litigation also support approval of the fee requested.
Securities litigation is regularly acknowledged to be particularly complex and expensive, usually
requiring expert testimony on several issues, including loss causation and damages.  *See, e.g.*, *In
re Genta Sec. Litig.*, 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud]
action involves complex legal and factual issues, and pursuing them would be costly and
expensive."); *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *3 (D.N.J. Nov. 28, 2007)
("[R]esolution of [accounting and damages issues] would likely require extensive and conceptually
difficult expert economic analysis. . . .  Trial on [scienter and loss causation] issues would [be]

lengthy and costly to the parties.").

Here, the $167.5 million recovery is very favorable in light of the complexity of this case and the significant risks and expenses that the Class has already faced and would continue to face by litigating to trial. This litigation had already advanced extremely far, including through the briefing of summary judgment and *Daubert* motions, but in the absence of settlement, Plaintiffs, through Lead Counsel, would have been required to engage in substantial additional work on further challenges to Plaintiffs' experts, pretrial preparation and motion practice, including work on a pre-trial order, proposed jury instructions, and motions *in limine*. Substantial time and expense would need to be expended in preparing the case for trial, and the trial itself would be expensive and uncertain, and would require a substantial amount of fact and expert testimony.

Finally, even if the jury returned a favorable verdict at trial, it is likely that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process. Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome. *See Warner Commc'ns*, 618 F. Supp. at 747-48 ("Even a victory at trial is not a guarantee of ultimate success. If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself."). Considering the magnitude, expense, and complexity of this securities case—especially when compared to the significant and certain recovery achieved by the Settlement—Lead Counsel's fee request is reasonable. Accordingly, this factor weighs in Lead Counsel's favor.

### E.    The Risk of Non-Payment Supports Approval of the Fee Request

Lead Counsel undertook this Action on an entirely contingent basis, taking the risk that the litigation would yield no or very little recovery and leave them uncompensated for their time, as well as for their out-of-pocket expenses. As explained in detail in the Joint Declaration, Lead

Counsel faced significant risks in this case from the outset that could have resulted in no recovery or a recovery smaller than the Settlement Amount, namely with regard to proving falsity, scienter, loss causation, and damages. ¶¶ 70-76. Moreover, substantial risks remained when the Settlement was reached, particularly with regard to summary judgment, *Daubert* motions, trial, and post-trial appeals. ¶¶ 77-78.

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See, e.g.*, *Warner Commc'ns*, 618 F. Supp. at 747-49 (citing cases). This is particularly true in securities litigation, such as this Action, because securities litigation has long been regarded as "notably difficult and notoriously uncertain." *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993).

Plaintiffs' Counsel have not been compensated for any of their time or expenses since the case began in 2019. Since that time, Plaintiffs' Counsel have expended over 124,000 hours in the prosecution of this litigation with a resulting lodestar of $69,426,020.50 and have incurred $8,210,215.06 in Litigation Expenses. ¶¶ 114, 128. "Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result, and that a successful result would be realized only after considerable and difficult effort. This factor strongly favors approval of the requested fee.

### F.    The Significant Time Devoted to This Case by Plaintiffs' Counsel Supports Approval of the Fee Request

As set forth above, since the inception of the case, Plaintiffs' Counsel have expended over 124,000 hours and incurred over $8 million in expenses prosecuting this Action for the benefit of the Class. ¶¶ 114, 128. As more fully discussed above and in the Joint Declaration, this Action

14

was vigorously litigated and defended.  This includes, *inter alia*, (a) filing the initial complaint in this matter in June of 2019; (b) conducting an extensive investigation into the alleged fraud, including interviewing 64 former employees of EQT and other industry participants and thoroughly reviewing publicly-available information about the claims, including EQT's and Rice's filings with the SEC, analyst reports, conference call transcripts, and news articles; (c) drafting a detailed 215-page amended complaint ("Complaint") based on Lead Counsel's extensive factual investigation; (d) successfully opposing Defendants' motion to dismiss the Complaint, through extensive briefing; (e) negotiating a protective order and ESI protocol with Defendants; preparing and responding to extensive discovery requests, including requests for the production of documents and interrogatories; and serving document subpoenas on over 50 non-parties; (f) obtaining, reviewing, and analyzing over seven million pages of documents obtained from Defendants and third parties, and preparing numerous memoranda, chronologies, and other work product concerning the relevant evidence to support the claims alleged; (g) taking the depositions of 28 fact witnesses, including those of certain former employees identified in the Complaint, the Individual Defendants, and other senior EQT employees; (h) successfully moving for class certification, including working with a financial economics expert who prepared a report concerning the efficient market for EQT common stock and class-wide damages; locating and producing documents in response to Defendants' document requests; defending the depositions of three representatives of Plaintiffs, two representatives of Plaintiffs' financial advisors, and two depositions of Plaintiffs' expert; and taking the deposition of Defendants' expert; (i) opposing Defendants' Rule 23(f) petition for an interlocutory appeal of the class certification decision to the U.S. Court of Appeals for the Third Circuit; (j) engaging in extensive expert discovery, which included working with experts who prepared expert reports in the areas of loss causation and

damages, natural gas well drilling, issues specific to the oil and gas industry, and due diligence and investment banking, and taking or defending 17 depositions of expert witnesses; (k) opposing Defendants' motion for summary judgment and Defendants' four *Daubert* motions seeking to exclude opinions and testimony from all of Plaintiffs' proposed expert witnesses through extensive briefing; (l) affirmatively moving for partial summary judgment and filing five *Daubert* motions to exclude certain opinions and testimony from Defendants' proposed expert witnesses; (m) participating in lengthy arm's-length settlement negotiations, including three mediation sessions over the course of four years—one with former U.S. District Judge Layn Phillips and two with Jed Melnick, Esq. of JAMS—each of which included the exchange of detailed mediation statements; and (n) drafting and negotiating a Term Sheet, the Stipulation setting out the terms of the Settlement, and related documentation. ¶¶ 3, 11-64, 112. At all times, Lead Counsel conducted their work with skill and efficiency, conserving resources and avoiding duplication of efforts. The foregoing represents a significant commitment of time, personnel, and out-of-pocket expenses by Plaintiffs' Counsel while taking on the substantial risk of recovering nothing for their efforts.

### G. The Requested Fee of 28% of the Settlement Fund Is Within the Range of Fees Typically Awarded in Actions of This Nature

As discussed above in Part III, the requested fee of 28% of the Settlement Fund is well within the range of fees awarded in comparable cases, when considered as a percentage of the fund or on a lodestar basis. Accordingly, this factor strongly supports approval of the requested fee.

### H. The Fact That the Benefits of the Settlement Are Attributable to the Efforts of Plaintiffs' Counsel Supports Approval of the Fee Request

In determining the appropriate fee, Third Circuit courts also consider whether class counsel benefited from a governmental investigation or enforcement action concerning the alleged wrongdoing. *See Prudential*, 148 F.3d at 338. Here, there were no parallel enforcement actions or prosecutions by the SEC or the U.S. Department of Justice that benefitted class counsel.

Accordingly, Lead Counsel respectfully submit that creation of the Settlement here is the result of Plaintiffs' Counsel's vigorous pursuit of Plaintiffs' claims through years of litigation, not the by-product of any governmental investigation. This factor further supports the reasonableness of the requested fee award. *See AT&T*, 455 F.3d at 173 ("Here, class counsel was not aided by the efforts of any governmental group, and the entire value of the benefits accruing to class members is properly attributable to the efforts of class counsel. This strengthens the . . . conclusion that the fee award was fair and reasonable.").

> **I.**    **The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request**

A 28% fee is also consistent—or below—typical attorneys' fees in non-class cases. *See Ocean Power*, 2016 WL 6778218, at *29. If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See, e.g., id.*; *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."). Thus, Lead Counsel's requested fee of 28% of the Settlement Fund is fully consistent with these private standards.

*      *      *

Accordingly, when considered under the Third Circuit's factors, Lead Counsel's requested fee of 28% of the Settlement Fund is fair and reasonable.

## V.    LEAD COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED

Lead Counsel also respectfully request that this Court approve payment of $8,210,215.06 for Litigation Expenses that Plaintiffs' Counsel incurred in connection with this Action. All of these expenses, which are set forth in declarations submitted by Plaintiffs' Counsel, were

17

reasonably necessary for the prosecution and settlement of this Action.  Counsel in a class action are entitled to recover expenses that were "'adequately documented and reasonable and appropriately incurred in the prosecution of the class action.'"  *ViroPharma*, 2016 WL 312108, at *18; *accord In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001).[6]

The expenses for which Lead Counsel seek payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses include, among others, expert/consultant fees, mediation fees, document management costs, online legal and factual research, photocopying, and postage expenses.  *See Viropharma*, 2016 WL 312108, at *18 (approving costs and expenses for, among other things, experts, travel, copying, postage, telephone, filing fees, and online and financial research); *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *23 (D.N.J. Nov. 10, 2016) (approving costs and expenses for experts, investigation, mediation, publishing notice, and online legal research, and noting that "[c]ourts have held that all of these items are properly charged to the [c]lass").  The largest category of expenses by far was for the retention of Lead Counsel's experts and consultants, which totaled $6,545,291.63, or approximately 80% of the total Litigation Expenses incurred by Plaintiffs' Counsel.  Plaintiffs' Counsel also incurred $849,408.00 for e-discovery costs.

The requested expense amount is in line with or less than other securities fraud litigations of a similar duration and scope.  *See, e.g.*, *AT&T*, 455 F.3d at 169 (approving expenses of nearly $5.5 million); *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, 2016 WL 11575090, at *5 (D.N.J. June 28, 2016) (approving award of $9.5 million in expenses).  A complete breakdown by category of the expenses incurred by Plaintiffs' Counsel is set forth in Exhibit 7 to the Joint

---

[6] Approximately $180,000 in expenses incurred by the Court-appointed claims administrator, A.B. Data, Ltd., in issuing the Class Notice, will be paid from the Settlement Fund following final approval of the Settlement, consistent with paragraph 14 of the Stipulation.

Declaration.  These expense items are recorded separately by Plaintiffs' Counsel, and such charges are not duplicated in the firms' hourly rates.

The Settlement Notice informed potential Class Members that Lead Counsel would apply for payment of Litigation Expenses in an amount not to exceed $9.25 million.  *See* Walter Decl. (Ex. 5), at Ex. A, ¶¶ 5, 53.  The total amount of Litigation Expenses requested is $8,243,897.30, which includes Plaintiffs' Counsel's request for $8,210,215.06 and Plaintiffs' request for $33,682.24 under the PSLRA, as discussed below.  To date, there has been no objection to the expense application.

## VI.    PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS UNDER 15 U.S.C. § 78u-4(a)(4)

In connection with their request for an award of Litigation Expenses, Lead Counsel also seek awards to each of the Plaintiffs for costs incurred by them directly related to their representation of the Class.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).  Here, Plaintiffs seek awards of $33,682.24 in total based on the substantial amount of time dedicated by their employees in furthering and supervising the Action.  *See* Blas Decl. (Ex. 1) at ¶¶ 11-12; Obuchowicz Decl. (Ex. 2) at ¶¶ 11-12; Murphy Decl. (Ex. 3) at ¶¶ 11-14.

Each of the Plaintiffs took an active role in the litigation and has been fully committed to pursuing the claims on behalf of the Class since they became involved in the case. During the course of the litigation, Plaintiffs' employees dedicated a substantial number of hours to the litigation by, among other things: meeting and communicating with Lead Counsel regarding case strategy and developments; reviewing and commenting on pleadings and briefs filed in the Action; searching for and producing documents in response to Defendants' requests; sitting for

depositions; meeting and consulting with Lead Counsel regarding settlement negotiations; and evaluating and approving the proposed Settlement. *See* Blas Decl. ¶¶ 6, 12; Obuchowicz Decl. ¶¶ 6, 12; Murphy Decl. ¶¶ 6, 12. These efforts required Plaintiffs' representatives to dedicate considerable time and resources to the Action that they would otherwise have devoted to their regular duties.

Numerous courts have approved reasonable awards to compensate plaintiffs for the time and effort they spent on behalf of a class. In *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009), the court awarded $144,657 to the New Jersey Attorney General's Office and $70,000 to certain Ohio pension funds to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.* at *21. As the court noted, their efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *Id.*; *see also In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 WL 9447623, at *29 (D.N.J. Dec. 9, 2008) (awarding "$150,000 to Lead Plaintiffs to compensate them for their reasonable costs and expenses directly relating to their representation of the Class pursuant to 15 U.S.C. § 78u–4(a)(4)"); *Schering-Plough ENHANCE*, 2013 WL 5505744, at *37-38 (approving awards of $102,447 to lead plaintiffs in PSLRA action).

The awards sought by Plaintiffs are reasonable and justified under the PSLRA based on the significant amount of time their employees devoted to the Action and should be granted.

## VII.    CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 28% of the Settlement Fund; $8,210,215.06 in payment of the reasonable Litigation Expenses that Plaintiffs' Counsel incurred in connection with the prosecution and resolution of the Action; and an aggregate of $33,682.24 in reimbursement of Plaintiffs' collective costs in representing the Class in the Action.

Dated: September 25, 2025

**COHEN MILSTEIN SELLERS & TOLL PLLC**

By: ___/s/ S. Douglas Bunch_____
        S. Douglas Bunch (NY Bar No. 712265, admitted *pro hac vice*)
Steven J. Toll (admitted *pro hac vice*)
Daniel S. Sommers (admitted *pro hac vice*)
S. Douglas Bunch (admitted *pro hac vice*)
1100 New York Avenue, N.W.
East Tower, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

Christina D. Saler (admitted *pro hac vice*)
100 N. 18th Street, Suite 1820
Philadelphia, PA 19103
Telephone: (267) 479-5707
Facsimile: (267) 479-5701
csaler@cohenmilstein.com

Benjamin F. Jackson (admitted *pro hac vice*)
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
bjackson@cohenmilstein.com

*Co-Lead Counsel for Plaintiffs and the Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By: ___/s/ Adam H. Wierzbowski_____
        Adam H. Wierzbowski (NY Bar No. 4203675, admitted *pro hac vice*)
Salvatore J. Graziano (admitted *pro hac vice*)
Adam H. Wierzbowski (admitted *pro hac vice*)
Robert Kravetz (PA I.D. #91168)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

Facsimile: (212) 554-1444
salvatore@blbglaw.com
adam@blbglaw.com
robert.kravetz@blbglaw.com

***Co-Lead Counsel for Plaintiffs and the Class***

**COMBER MILLER LLC**
Michael A. Comber (PA I.D. #81951)
436 Seventh Avenue
Pittsburgh, PA 15219
Telephone: (412) 894-1380
Facsimile: (412) 291-2109
mcomber@combermiller.com

***Liaison Counsel for Lead Plaintiffs and the Class***

## <u>CERTIFICATE OF SERVICE</u>

I, Adam H. Wierzbowski, hereby certify that on September 25, 2025, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's CM/ECF automated filing system.

*/s/ Adam H. Wierzbowski*
Adam H. Wierzbowski
